**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

RUTH ANTONELLI,

                                        Plaintiff,                        22-cv-04449 (VF)

                    -against-                                          **OPINION & ORDER**

KILOLO KIJAKAZI,
Acting Commissioner of the Social Administration,

                                        Defendant.

------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

         Plaintiff Ruth Antonelli seeks judicial review of a final determination by Defendant, the

Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying

Antonelli's application for Disability Insurance Benefits and Supplemental Security Income

Benefits under Titles II and XVI, respectively, of the Social Security Act (the "Act"). Before the

Court is Antonelli's motion for judgment on the pleadings and the Commissioner's cross-motion

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons set forth below, Antonelli's motion is **GRANTED**, and the Commissioner's

cross-motion is **DENIED**.

# BACKGROUND[1]

## A. Procedural History

On September 18, 2015, Antonelli filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), alleging May 19, 2015, as the onset date of her disability. ECF Nos. 14-15,[2] SSA Administrative Record ("R.") at 85-86, 205-214. When Antonelli applied for DIB and SSI, she alleged disability based on post-traumatic stress disorder ("PTSD"), "anxiety attack," "panic attack," "acid reflux," gastroesophageal reflux disease ("GERD"), "polyp," "bulging disk," "herniated disk neck," and "herniated disk lower back." Id. at 85-86. Antonelli's claims for DIB and SSI were initially denied on February 18, 2016, id. at 111-26, and on March 1, 2016, Antonelli filed a written request for a hearing before an administrative law judge, id. at 127-28.

On January 24, 2018, Antonelli and her counsel, Kira Treyvus, appeared before Administrative Law Judge Sharda Singh at a hearing in White Plains, New York. Id. at 53-84. On July 10, 2018, Administrative Law Judge Singh issued a written decision, finding that Antonelli had not been under a disability within the meaning of the Act from May 19, 2015, through the date of the decision. Id. at 14-33. Antonelli requested that the SSA Appeals Council review Administrative Law Judge Singh's decision. Id. at 202-04. Her request was denied on April 26, 2019. Id. at 2-7. Antonelli then commenced a civil action seeking review of Administrative Law Judge Singh's decision on June 26, 2019. See Case No. 19-CV-5986, ECF No. 2. By Stipulation and Order dated May 18, 2021, the Court remanded Antonelli's case to the

---

[1] Page citations herein to documents filed on ECF are to the original pagination in those documents.

[2] The voluminous Administrative Record was filed on the electronic docket in multiple parts. See ECF Nos. 14-15. The citations to the Administrative Record herein are to the original pagination across the entire record.

Commissioner for further proceedings. See id. ECF No. 35. The Appeals Council vacated Administrative Law Judge Singh's July 2018 decision on November 4, 2020, and remanded Antonelli's case to another administrative law judge with instructions to address the conflict between that decision and the vocational evidence regarding Antonelli's ability to perform overhead reaching, and to obtain supplemental vocational evidence. R. at 1866-67.

On January 18, 2022, Antonelli and her counsel again appeared before an administrative law judge at a hearing in White Plains, New York, this time before Administrative Law Judge Vincent Cascio (hereinafter, the "ALJ"). Id. at 7098-136. On March 16, 2022, the ALJ issued a written decision, again denying Antonelli's claims. Id. at 1838-53. Antonelli did not request that the SSA Appeals Council review the ALJ's decision, and the Appeals Council did not review the ALJ's decision sua sponte. See ECF No. 19 ("Pl.'s Br.") at 2. That made the March 16, 2022 decision of the ALJ the final action of the Commissioner. See Maurer v. Comm'r of Soc. Sec., 21-CV-6518 (KMK) (JCM), 2022 WL 2657146, at *1 (S.D.N.Y. June 17, 2022) ("Because Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction within 60 days, the ALJ's decision became the final decision of the Commissioner and is properly before this court.") (citing 20 C.F.R. § 404.984(d)).

On May 30, 2022, Antonelli commenced the instant action seeking judicial review of the ALJ's decision. See Complaint, ECF No. 1. On October 5 and October 7, 2022, the Commissioner filed the Administrative Record, which constituted his answer. ECF Nos. 14-15. Thereafter, on November 8, 2022, Antonelli moved for judgment on the pleadings and submitted a memorandum of law in support of her motion, requesting that the Court reverse the ALJ's decision or remand for further proceedings. ECF Nos. 18-19. On January 6, 2023, the Commissioner submitted his opposition and a cross-motion for judgment on the pleadings. ECF

Nos. 22-23. Antonelli filed a reply to the Commissioner's opposition on January 11, 2023. ECF No. 24.

### B. **Medical Evidence**

The parties' memoranda in support of their motions for judgment on the pleadings provide summaries of the medical evidence contained in the administrative record. See ECF No. 19 ("Pl.'s Br.") at 7-17; ECF No. 23 ("Def.'s Br.") at 2-3, 5-10. Having examined the record, the Court concludes that the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence. Moreover, no party has objected to the other's summary of the medical evidence. The Court therefore adopts the parties' summaries as complete for purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the record is discussed below to the extent necessary to address the issues raised in the pending cross-motions.

### DISCUSSION

### A. **Legal Standards**

#### 1.   Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).

      2.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

### 3.  Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A); see id. § 1382c(a)(3)(B). In assessing a claimant's

impairments and determining whether they meet the statutory definition of disability, the

Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful

that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'"

Mongeur, 722 F.2d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)).

The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or

medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by

the claimant or others; and (4) the claimant's educational background, age, and work

experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per

curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation

process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d

Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20

C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide

if the claimant has a "severe medically determinable physical or mental impairment," id. §

416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c).

Third, if the claimant has such an impairment, the Commissioner considers whether the medical

severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled.

Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, such as Antonelli's application, the SSA's regulations apply the "treating physician rule," which requires an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant.[3] See 20 C.F.R. § 416.927(c)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from claimant's "treating sources" when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources, which include some professionals other than physicians, see id. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).

---

[3] On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017. See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5869-70, 2017 WL 168819 (Jan. 18, 2017). As Antonelli's application was filed in September 2015, those revisions do not apply here. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

Social Security Administration regulations, as well as Second Circuit precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. See Estrella, 925 F.3d at 95-96. At the first step, "the ALJ must decide whether the opinion is entitled to controlling weight." Id. at 95. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (second alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "'[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" Id. (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).

If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ "must determine how much weight, if any, to give" the opinion. Estrella, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the so-called "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129). An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight to a medical opinion of a treating physician is a procedural error. Selian, 708 F.3d at 419-20.

The ALJ must "give good reasons" in its decision for the weight attributed to the treating physician's medical opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." LaTorres v. Comm'r of Soc. Sec. Admin.,

10

485 F. Supp. 3d 482, 492 (S.D.N.Y. 2020) (quoting Harris v. Colvin, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016)) (internal quotation marks omitted). The ALJ's failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129-30); see also Estrella, 925 F.3d at 96. A "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). Even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

The Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. Osorio v. Barnhart, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a

claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. Id.; see also 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quotation omitted); see also 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

### B. The ALJ's Decision

On March 16, 2022, the ALJ issued his decision, R. at 1838-53, finding that Antonelli was not disabled under the Act. Id. at 1839. The ALJ began by explaining the five-step process for determining whether an individual is disabled. Id. at 1840-41.

As a threshold matter, the ALJ found that Antonelli met the insured status requirements of the Act through December 31, 2020. Id. at 1841. At step one, the ALJ found that Antonelli had not engaged in substantial gainful activity since May 19, 2015. Id. At step two, the ALJ found that Antonelli had twelve severe impairments: (1) status post gastric bypass; (2) obesity; (3) irritable bowel syndrome; (4) lumbar and cervical disc space narrowing; (5) fibromyalgia; (6) diabetes; (7) left elbow tendinosis; (8) status-post left elbow extensor tendon debridement and repair; (9) panic disorder; (10) anxiety disorder; (11) depression; and (12) PTSD. Id.

At step three, the ALJ found that Antonelli "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id. at 1842. The ALJ determined that Antonelli's impairments do not meet or equal the listings in 1.15, 1.16, 1.18, and 5.06. Id. at 1842-43. The ALJ also assessed Antonelli's diabetes and found that after "[considering] all work-related physical and mental limitations . . . . the symptoms of [Antonelli's] diabetes [did] not meet or equal any listing." Id. at 1843-44. The ALJ then concluded that Antonelli's fibromyalgia and chronic fatigue syndrome could not meet a listing in Appendix 1 because they were not listed impairments and the evidence failed to demonstrate that they medically equaled a listing. Id. at

1844. The ALJ also found that Antonelli's obesity did not meet or equal a listing because Antonelli did not have another impairment that meets a listing. Id.

In assessing Antonelli's mental impairments, the ALJ applied evidence in the record to each of the "paragraph B" criteria, including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Id. at 1844-45. The ALJ concluded that Antonelli's mental impairments caused mild limitations in understanding, remembering, or applying information and moderate limitations in the remaining three functional area. Id. The ALJ concluded that because Antonelli's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." Id. at 1845. Additionally, the ALJ determined that Antonelli does not meet the "paragraph C" criteria because the record did not show a medically documented history of the disorder's existence for at least two years, "with evidence of both: medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder and marginal adjustment." Id.

Before proceeding to step four, the ALJ found that Antonelli maintained the RFC "to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can occasionally climb ramps/stairs; [and] never climb ropes, ladders, or scaffolds." Id. Specifically, the ALJ found that Antonelli can "occasionally stoop, kneel, crouch, and crawl"; she can also "occasionally push/pull"; however, she should not be exposed to "unprotected heights or hazardous machines." Id. The ALJ also found that Antonelli "can understand, remember, and carry out simple, routine, repetitive work related tasks, with only occasional contact with the public, coworkers and supervisors." Id. at 1845-46. The ALJ lastly stated that Antonelli "must

work in a low stress job," which the ALJ defined as "requiring only occasional changes in the workplace." Id.

In considering Antonelli's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Id. at 1846. The ALJ analyzed Antonelli's impairments, and after considering the evidence, found that even though Antonelli's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Antonelli's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. The ALJ also independently evaluated each of the medical opinions and prior administrative medical findings and determined whether to assign each opinion "partial weight," "some weight," "little weight," or "very little weight." Id. at 1849-51.

At step four, the ALJ found that Antonelli was unable to perform her past relevant work, as a secretary and general office clerk. Id. at 1851. At step five, the ALJ considered Antonelli's "age, education, work experience, and [RFC]," and found that "there [were] jobs that exist in significant numbers in the national economy that [Antonelli] [could] perform." Id. at 1852. Based on testimony from a vocational expert ("VE") and in conjunction with the Medical-Vocational Guidelines, the ALJ concluded that Antonelli was "not disabled" because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 1853. The ALJ cited the VE's testimony that given Antonelli's age, education, work experience, and RFC, such an individual would be able to perform work as a:

(1) photocopy machine operator (DOT 207.685-014); (2) marker (DOT 209.587-034); or (3) document preparer (DOT 222.587-038). Id. at 1853. Accordingly, the ALJ concluded that Antonelli "has not been under a disability" within the meaning of the Act "from May 19, 2015, through the date of this decision." Id. at 1853 (citing 20 CFR 404.1520(g) and 416.920(g)).

## ANALYSIS

Antonelli attacks the ALJ's determination on three grounds. Antonelli asserts that the ALJ failed to properly: (1) evaluate the medical opinion evidence; (2) determine Antonelli's RFC; and (3) develop the record. Pl.'s Br. at 20-29. For the reasons explained below, the ALJ failed to properly evaluate the medical opinion evidence. Because a remand on those grounds is warranted, I do not reach the issue of whether the ALJ sufficiently developed the record or whether his RFC determination is supported by substantial evidence.

### A. The ALJ did not comply with the "treating physician" rule.

In his assessment of the medical evidence, the ALJ considered the opinion evidence of Drs. Kaci, Antiaris, Abellard, Vaccaro, and Wing. R. at 1850-51. The ALJ concluded that the opinions of Drs. Kaci and Antiaris were entitled "partial weight"; that the opinions of Drs. Abellard and Vaccaro were entitled to "little weight"; and that the opinion of Dr. Wing was entitled to "very little weight." Id. Antonelli argues that the ALJ erred because he failed to properly evaluate these medical opinions. Pl.'s Br. at 26-28. Specifically, Antonelli avers that the ALJ should have given greater weight to the opinions of Drs. Abellard and Wing, her treating physicians, and that he should have given less weight to the opinions of Drs. Antiaris and Kaci. Id. The Commissioner counters that the ALJ properly evaluated the medical opinions and "provided good reasons for weighing the evidence as he did." Def.'s Br. at 20-24.

16

Under the "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating source"—as defined in the regulations—when determining whether the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); accord Morales v. Berryhill, 484 F. Supp. 3d 130, 142 (S.D.N.Y. 2020). However, if there are genuine conflicts in the medical evidence, the Commissioner may resolve them and find that the treating physician's opinion is not entitled to controlling weight. Monroe v. Comm'r of Soc. Sec., 676 F. App'x. 5, 7 (2d Cir. 2017) (summary order) (citing Veino, 312 F.3d at 588). Stated differently, the opinion of the treating physician is not entitled to controlling weight where the opinion is "not consistent with other substantial evidence in the record" or the opinion is not well-supported. Halloran, 362 F.3d at 32; see also Ratliff v. Barnhart, 92 F. App'x 838, 840 (2d Cir. 2004). "When controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors." Monroe, 676 F. App'x at 7 (citing 20 C.F.R. § 404.1527(c)). The ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. Id. (citation omitted).

Here, the ALJ did not comply with the treating physician rule because he failed to identify Drs. Abellard and Wing as treating physicians, and he declined to give controlling weight to those doctors' opinions without discussing the required Burgess factors or otherwise providing good reasons for his decision to give those doctors' opinions less weight. On this basis alone, a remand is required. See Rivera v. Berryhill, No. 17-CV-991 (JLC), 2018 WL 4328203,

at *14 (S.D.N.Y. Sept. 11, 2018) (finding the ALJ's failure to consider all of the relevant factors necessary for discounting a treating physician's opinion and failure to give good reasons for declining to give a treating psychiatrist's opinion controlling weight sufficient basis upon which to remand the case).

      1. <u>The ALJ failed to identify Drs. Abellard and Wing as treating physicians.</u>

According to SSA regulations, a treating source is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). Generally, a physician who has examined a claimant on one or two occasions is not considered a treating physician. <u>See</u> <u>id.</u> However, there is no minimum number of visits or period of treatment by a physician before this standard is met. <u>Id.</u> (ongoing treatment relationship can be established by medical source "who has treated or evaluated [the claimant] only a few times . . . if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)"). "[C]ourts have held that SSA adjudicators should focus on the nature of the ongoing physician-treatment relationship, rather than its length." <u>Vasquez v. Colvin</u>, No. 14-CV-7194 (JLC), 2015 WL 4399685, at *20 (S.D.N.Y. July 20, 2015) (internal alteration and quotation marks omitted) (citing <u>Schisler v. Bowen</u>, 851 F.2d 43, 45 (2d Cir. 1988)) (upholding draft Social Security Ruling clarifying that treating physician's "ongoing" relationship with claimant may be "of a short time span"); <u>see also</u> <u>Simmons v. U.S. R.R. Ret. Bd.</u>, 982 F.2d 49, 55 (2d Cir. 1992) ("The nature—not the length—of the [physician-patient] relationship is controlling."); <u>Vargas v. Sullivan</u>, 898 F.2d 293, 294 (2d Cir. 1990) (applying treating physician rule where doctor saw patient for only three months).

The ALJ's decision does not explicitly identify Drs. Abellard and Wing as treating physicians. However, Dr. Abellard's treatment notes indicate that he met with Antonelli approximately every three weeks from May 2015 to January 2018, and again from January 2020 to December 2020. R. at 1102-43, 2032-46; see also id. at 447 (Dr. Abellard's mental medical source statement indicates that he met with Antonelli on average "every 3 weeks for about 45 minutes"). In Dr. Wing's physical medical source statement from December 4, 2017, she reported seeing Antonelli every three months for two years, since October 20, 2013. Id. at 460.

 Based on the evidence in the record, the ALJ ought to have considered Dr. Abellard and Dr. Wing to be treating physicians. Antonelli began her treatment with Dr. Abellard on April 30, 2015, seeing her regularly for a three-year period and then again for another year, from January 2020 to December 2020. R. at 39, 1102-43, 2032-46. Dr. Abellard examined Antonelli, diagnosed her with severe anxiety disorder and PTSD, prescribed her medication, and scheduled follow-up appointments for further treatment. Id. Likewise, Antonelli was also seen regularly by Dr. Wing, for a period of approximately three years. Id. at 460. Dr. Wing treated her at least fourteen times. Id. at 2047-2344. Dr. Wing examined Antonelli, ordered lab testing, prescribed her medications, and scheduled follow-up appointments for further treatment. Id. Dr. Wing also diagnosed Antonelli with "anxiety," "depression," "diabetes mellitus," "dysplastic nevi," "gastric bypass status for obesity," "(GERD) gastroesophageal reflux disease," "history of panic attacks," "kidney stone," "post traumatic stress disorder (PTSD)," and "renal disorder." Id. at 2181-82.

Courts have inferred the existence of a treating relationship in circumstances where the duration and frequency of a claimant's visits with the physician were far less than here. In Nunez v. Berryhill, for example, a physician who met with the claimant three times over the course of three months was considered a treating source. Id., No. 16–CV–5078 (HBP), 2017 WL 3495213,

at *23-24 (S.D.N.Y. Aug. 11, 2017). There, the doctor "wrote an EMG report[,]" "referred plaintiff for the EMG[,]" "noted plaintiff's medical history and the results of the EMG and a physical examination[,]" "diagnosed plaintiff[,]" and "prescribed medication[.]" Id. at *24. In Vasquez v. Colvin, a doctor who met with the claimant four times was considered a treating physician where he "referred Vasquez to other specialists for further treatment and testing[,]" "wrote a brief note confirming [claimant's] impairments[,]" and was referred to by the claimant as his treating physician. Id., No. 14-CV-7194 (JLC), 2015 WL 4399685, at *20. In Harrison v. Secretary of Health & Human Services, a physician who had seen the plaintiff four times was considered a treating source where she "diagnosed plaintiff and referred her for various tests and treatment." 901 F. Supp. 749, 755 (S.D.N.Y. 1995); see also Snell, 177 F.3d at 130 (treating relationship found where doctor met with claimant three times); Vargas, 898 F.2d at 294 (applying treating physician rule where doctor saw patient for only three months). Here, not only did Antonelli have regular visits with Drs. Abellard and Wing over a period spanning years, but also both physicians diagnosed plaintiff with various ailments, prescribed her medication for those ailments, and tracked her progress for a sustained period of time.

Thus, because the record indicates that Drs. Abellard and Wing evaluated Antonelli, had an ongoing relationship with her, and provided her with treatment, the ALJ should have explicitly identified Drs. Abellard and Wing as treating physicians and evaluated their opinions accordingly. The ALJ's failure to do so requires a remand.

### 2. The ALJ failed to consider the required factors in evaluating what weight to afford the opinions of Drs. Abellard and Wing.

Although he did not explicitly recognize Drs. Abellard and Wing as treating physicians, the ALJ did evaluate their opinions and afforded "little weight" to Dr. Abellard's opinion and "very little weight" to Dr. Wing's opinion. R. at 1850-51. However, the ALJ set forth his

reasoning in five sentences for Dr. Abellard and eight sentences for Dr. Wing, without any indication that he considered all of the <u>Burgess</u> factors. <u>See</u> <u>Burgess</u>, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(d)(2)); <u>see also</u> <u>Halloran</u>, 362 F.3d at 32 ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician *must* consider various 'factors' to determine how much weight to give to the opinion.") (emphasis added). While the ALJ need not have expressly discussed each factor, it should have been clear from his decision that he considered each factor. <u>See, e.g.</u>, <u>Camacho v. Colvin</u>, No. 15–CV–7080 (CM) (DF), 2017 WL 770613, at *22 (S.D.N.Y. Feb. 27, 2017) ("[W]hen an ALJ decides to give less than controlling weight to the opinion of a treating source, the ALJ's consideration of each of those factors must be transparent . . . ") (internal quotation marks omitted).

First, the ALJ's decision indicates that he failed to consider factors such as the length, nature, and extent of the treatment relationship between Antonelli and Drs. Abellard and Wing. As to those factors, the ALJ's decision is silent. "This failure constitutes reversible error." <u>Rivera</u>, 2018 WL 4328203, at *13 (citations omitted). As explained, Dr. Abellard treated Antonelli no less than fifty-five times over the course of at least four years. R. at 1102-43, 2032-46. And Dr. Wing treated Antonelli at least fourteen times over the course of about three years. <u>Id.</u> at 460, 2014-2346. In such a case, "[t]he failure of the ALJ to consider factors such as the length, nature, and extent of the treatment relationship is especially conspicuous." <u>Rivera</u>, 2018 WL 4328203, at *13. Given the length and frequency of her relationship with Drs. Abellard and Wing, they each "[were] likely to have obtained a longitudinal picture" of Antonelli's condition and impairments, "indicating that [their] opinion[s] should have carried significant weight." <u>Id.</u> (citing 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the

medical source's medical opinion more weight than we would give it if it were from a nontreating source.")). "This is especially true when the physician has been treating the plaintiff for mental health issues," as is the case here. Rivera, 2018 WL 4328203, at *13; accord Rodriguez v. Astrue, No. 07-CV-534 (WHP) (MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009) ("The mandate of the treating-physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental-health context.")).

The ALJ also made no express mention of other factors when discussing the opinions of Drs. Abellard and Wing, and nor does he appear to have considered them, despite the fact that he was obligated to do so. For instance, the ALJ did not discuss the evidence in support of the opinions of Drs. Abellard and Wing. See Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(d). For Dr. Abellard's opinion, the ALJ did not discuss any of the fifty pages of Dr. Abellard's treatment records. Most notably, the ALJ did not discuss that during almost every visit, Dr. Abellard remarked on Antonelli's demeanor, noting at times that her mood or affect was "anxious," or occasionally remarking that her mood was "depressed," "sad," or "angry." R. at 1102-43, 2032, 2037-38, 2044. Similarly, the ALJ did not discuss any of Dr. Wing's treatment records, other than one reference to a statement Antonelli made during one of her visits to Dr. Wing. Id. at 1849. For example, the ALJ did not discuss the many visits where Dr. Wing found that Antonelli was displaying symptoms of anxiety. See id. at 2058, 2165, 2240. Nor did the ALJ consider whether Drs. Abellard and Wing were specialists in the relevant fields, whose opinions would therefore merit particular consideration. See Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(5). In fact, as a psychiatrist, Dr. Abellard's specialty was directly relevant to Antonelli's mental disorders.

Further, the ALJ referred to, but did not discuss, "the consistency of [Dr. Abellard's] opinions with the record as a whole." Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(4). The ALJ stated, in a cursory fashion and without citation to the record, that Dr. Abellard's opinion was "inconsistent with the overall record, which consistently reflects normal mental status examinations." R. at 1850. The ALJ, however, did not explain *how* Dr. Abellard's opinion was inconsistent with symptoms and findings in the record. And, in fact, as just explained, the record does include evidence of symptoms and findings that are consistent with Dr. Abellard's opinion. Although the Commissioner now points to evidence in the record showing that Dr. Abellard's opinion "was inconsistent with examination findings" and "with the record as a whole," see Def.'s Br. at 21, it was an error for the ALJ to not have done the same analysis in the first instance. See Halloran, 362 F.3d at 33 (remanding when the ALJ's opinion did not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

Turning to Dr. Wing, when examining her opinion, the ALJ briefly explained why he found her opinion inconsistent with the record, providing a (slightly) more thorough explanation and giving one citation to the record. R. at 1850-51. However, "before assigning less than controlling weight to [Dr. Wing's] opinion[], the ALJ was required to consider *all* the factors set forth" in the applicable regulation. Ulyses Rojas, 2019 WL 2895670, at *4. And as already discussed, in explaining his rationale for giving less than controlling weight to Dr. Wing's opinion, the ALJ made no mention of the examination relationship, the treatment relationship (the length, the frequency of examination, the nature and extent), or Dr. Wing's specialty in the medical field.

Where, as here, the ALJ did not address the relevant factors, the Court must remand the case for further consideration. See, e.g., Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 266-

67 (S.D.N.Y. 2016) (ALJ's failure to consider factors such as specialization, nature of treatment relationship, and frequency of examination, in assessing the weight afforded to treating physician's medical opinion, was grounds for remand); Ramos v. Comm'r of Soc. Sec., No. 13-CV-3421 (KBF), 2015 WL 7288658, at *7 (S.D.N.Y. Nov. 16, 2015) (remanding case where ALJ did not consider required factors such as specialization and length of treatment in weighing the opinion of treating physician); Hidalgo v. Colvin, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *20 (S.D.N.Y. June 25, 2014) (ALJ's failure to refer to all factors when explaining weight given to treating psychiatrist's opinion was legal error); Clark v. Astrue, No. 08-CV-10389 (LBS), 2010 WL 3036489, at *4 (S.D.N.Y. Aug. 4, 2010) (ALJ did not consider "the frequency of examination and the length, nature, and extent of the treatment relationship," or "whether the opinion [was] from a specialist," which was "legal error [that] constitute[d] grounds for remand") (internal quotation marks omitted). On remand, the ALJ should assess the opinions of Drs. Abellard and Wing, considering all aspects of those opinions, the record, and the required regulatory factors.

3. <u>The reasons provided by the ALJ were insufficient to afford less than controlling weight to the opinions of the treating physicians.</u>

The ALJ explicitly provided two reasons for offering Dr. Abellard's opinion "little weight," and Dr. Wing's opinions "very little weight." First, the ALJ stated that Drs. Abellard and Wing "merely checked off boxes on a form rather than provide an explanation for the limitations given." R. 1850-51. The ALJ also found Dr. Abellard's opinions "inconsistent with the overall record," which the ALJ indicated "consistently reflects normal mental status examinations" for Antonelli. <u>Id.</u> at 1850. As to Dr. Wing's opinion, the ALJ found it "inconsistent with the extensive treatment notes by this provider and others." <u>Id.</u> at 1851.

As it concerns Dr. Abellard, the ALJ failed to articulate what evidence he relied on when discrediting his opinion. See R. at 1850. In determining that Dr. Abellard's opinion was inconsistent with the record as a whole, the ALJ made vague reference to the "normal mental status examinations" contained therein. Id. The ALJ, however, failed to indicate what "normal mental status examinations" he was referring to and did not provide a citation to where in the record such examinations were found. Id. In fact, nowhere in the ALJ's decision does he mention with specificity any mental-status examinations.

Although the ALJ did provide some explanation as to why he found Dr. Wing's opinion to be inconsistent with the record, id. at 1850-51, the ALJ's reasoning nonetheless does not constitute a good reason for disregarding Dr. Wing's opinion. The ALJ accorded "little weight" to Dr. Wing's opinion because he determined that it was "inconsistent with the extensive treatment notes by this provider and others at White Plains Physicians Associates," which according to the ALJ, noted "grossly normal physical and mental status examinations," reported Antonelli "feeling generally well other than end-of-day fatigue," and indicated that Antonelli "was exercising five days per week," id. at 1851. To support this conclusion, the ALJ points only to Exhibit 14F in the record, which contains office treatment records from White Plains Physicians Associates from January 2016 to December 2017. Id. A review of Exhibit 14F, however, reveals that the ALJ mischaracterized its contents.[4]

---

[4] Even if the ALJ were correct in determining that Dr. Wing's opinion was inconsistent with the underlying record, the ALJ had a duty to develop the record to attempt to resolve the inconsistency. Apart from the ALJ's general "affirmative duty to develop the administrative record," Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing Tejada v. Apfel, 167 F.3d 770, 774 (2d. Cir. 1999)), there also exists a *specific* duty to develop the record as it pertains to treating physicians like Dr. Wing. Ulyses Rojas v. Berryhill, No. 18-CV-190 (AWT), 2019 WL 2895670, at *4 (D. Conn. Mar. 26, 2019) ("'The ALJ *must* request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be resolved, the report is missing necessary information, or the report does not seem to

Dr. Wing opined on Antonelli's capacity to sit and stand, lift weight, and perform low-stress work. Id. at 460-64, 1850. The treatment records in Exhibit 14F, however, are completely unrelated to that opinion. For example, treatment notes from two visits in Exhibit 14F concern a dermatological issue and its treatment. Id. at 533-34, 638 (reason for visit nevus[5]); see also R. 533-45, 638-47 (treatment notes related to two visits for nevus). In other treatment notes in Exhibit 14F, Antonelli is treated for a sore throat. See id. at 556 (reason for visit laryngitis, sore throat, chest tightness, and right ear pain); id. at 590 (reason for visit sore throat). At four other visits reflected in treatment notes in Exhibit 14F, Antonelli is treated for iron deficiency. See id. at 614, 649, 680, 743 (reason for visit iron deficiency). Other treatment notes in Exhibit 14F concern Antonelli's symptoms of abdominal bloating and recurring urinary tract and yeast infections. Id. at 693-706.

The ALJ points to these treatment notes to support his determination that Dr. Wing's opinion should carry very little weight, but the treatment notes cannot provide a good reason for rejecting Dr. Wing's opinion. The records in Exhibit 14F relate to one-off issues and do not speak to the ultimate issue of whether Antonelli can sit and stand, lift weight, or perform low-stress work. Nor do these records contain, contrary to the ALJ's characterization, any evidence to indicate that Antonelli had "grossly normal physical and mental status examinations" or that

---

be based on medically acceptable clinical and diagnostic techniques."') (quoting 20 C.F.R. § 404.1512(e)(1)) (emphasis added). This is especially true where, as here, the ALJ has determined certain inconsistencies in the treating physicians report. Id. ("When 'an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."') (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)).

[5] Dorland's Illustrated Medical Dictionary defines nevus as a "congenital lesion of the skin," or "a type of hamartoma representing a circumscribed stable malformation of the skin," and states that it is synonymous with a "birthmark." Nevus, Dorland's Illustrated Medical Dictionary (33d ed. 2020).

Antonelli reported "feeling generally well other than end-of-day fatigue." Id. at 1851. The ALJ's characterization of the evidence he relied on is therefore at odds with the record itself. "As the ALJ's proffered reason 'relies on a mischaracterization of the record,' it thus 'cannot constitute a 'good reason' for rejecting the physician's opinion." Daley v. Berryhill, No. 16-CV-2246 (PGG) (JLC), 2017 WL 3208030, at *15 (S.D.N.Y. July 28, 2017) (quoting Marthe v. Colvin, No. 15-CV-6436 (MAT), 2016 WL 3514126, at *7 (W.D.N.Y. June 28, 2016)).

Additionally, the ALJ failed to articulate his basis for crediting the opinions of consultative examiners Drs. Kaci and Antiaris over the opinions of treating physicians Drs. Abellard and Wing. The ALJ gave the opinions of these consultative examiners more weight. See R. at 1847-49. But Drs. Kaci and Antiaris each evaluated Antonelli only once. Id. at 417-21, 440-46. Their evaluations therefore conveyed "only a snapshot" of Antonelli's symptoms, in contrast to the reports of Dr. Abellard, whose opinion reflected Antonelli's condition over the course of several years. Emsak v. Colvin, No. 13-CV-3030, 2015 WL 4924904, at *12 (E.D.N.Y. Aug. 15, 2015). The Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). "The ALJ was thus required to give a much more detailed explanation of why [he] credited the opinions of [the consultative examiners] over those of [Antonelli's] long-time treating physician[s]." Giambrone v. Colvin, No. 15-CV-5882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. Apr. 3, 2017). And, here, where the ALJ failed to do so, his findings were improper. See Agins-McClaren v. Colvin, 14-CV-8648 (AJP), 2015 WL 7460020, at *8-9 (S.D.N.Y. Nov. 24, 2015) (ALJ's analysis of the treating physician was improper because the ALJ's statements were conclusory and the ALJ failed to reconcile the treating physician's opinion with those of the other physicians).

The ALJ was also incorrect to discount the opinions of Drs. Abellard and Wing for their use of checked boxes on a form. R. at 1850-51. First, the records of both Drs. Abellard and Wing contain more than just checked-off boxes. Both doctors' physical medical source statements contained written responses to the questions on the forms, and the record also contains other medical evidence from both Drs. Abellard and Wing. See id. at 447-52, 460-63. Nevertheless, even if the records of Drs. Abellard and Wing only contained checked-off boxes, the Second Circuit has said that the form of an opinion cannot be the sole basis for the discount of that opinion. See Colgan v. Kijakazi, 22 F.4th 353, 361 (2d Cir. 2022) (the evidentiary weight of a treating physician's medical opinion cannot be discounted by an ALJ "based on the naked fact that it was provided in a check-box form"); see also Amanda F. v. Saul, No. 19-CV-1026 (MJR), 2021 WL 236015, at * 5 (W.D.N.Y. Jan. 25, 2021) ("[i]t is improper to discount a treating physician's opinion due to its check box format."); cf. Stagnitta v. Colvin, No. 13-CV-6028 (MAT), 2014 WL 1413386, at *10 (W.D.N.Y. Apr. 11, 2014) (ALJ properly discounted treating physician's assessment of plaintiff's functional limitations based off its nature as a form with checked boxes where it was unaccompanied by any explanation or detail regarding her conclusion).

In sum, the ALJ improperly afforded less than controlling weight to Dr. Abellard's and Dr. Wing's opinions without giving good reasons for doing so and without having considered all of the required factors. Accordingly, a remand for further proceedings is warranted. See, e.g., Ogirri v. Berryhill, No. 16-CV-9143 (JLC), 2018 WL 1115221, at *15 (S.D.N.Y. Feb. 28, 2018) (remanding a case for further proceedings where the ALJ afforded less than controlling weight to the treating physician's opinions without giving good reasons and where the ALJ failed to consider all the relevant factors in assigning the weight to the opinion).

## <u>CONCLUSION</u>

For the foregoing reasons, Antonelli's motion for judgment on the pleadings is

**GRANTED,** and the Commissioner's cross-motion for judgment on the pleadings is **DENIED**.

On remand, the ALJ should apply the treating physician rule and all its required factors to the

opinions of Drs. Abellard and Wing, fully develop the record, and revise the RFC and disability

determination as needed. The Clerk of Court is respectfully directed to terminate the motions at

ECF Nos. 18 and 22.


DATED:          September 27, 2023
                New York, New York



                                        Respectfully submitted,

                                        _____
                                        VALERIE FIGUEREDO
                                        United States Magistrate Judge